**SIGNED this 9th day of June, 2011**

_____
John C. Cook
UNITED STATES BANKRUPTCY JUDGE

_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR
### THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **U.S. Insurance Group, LLC** | ) | No. 09-12487 |
| | ) | **Chapter 7** |
| **Debtor** | ) | |
| | ) | |
| **Richard P. Jahn, Jr.** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Adv. No. 09-1189 |
| | ) | |
| **Genesis Merchant Partners, LP** | ) | |
| | ) | |
| **Defendant** | ) | |

### M E M O R A N D U M

This adversary proceeding is before the court on the plaintiff's motion for summary judgment on his complaint seeking the avoidance and recovery of alleged preferential transfers made to

the defendant totaling $128,063.89.[1] Having reviewed the motions, briefs, affidavits, and other related filings, the court will grant the plaintiff's motion.

**I.**

The record reveals the following undisputed facts. On September 1, 2008, debtor U.S. Insurance Group, LLC, executed a one-year $800,000 promissory note in favor of the defendant, Genesis Merchant Partners, LP. After the deduction of a large number of expenses, the debtor received $726,000 in loan proceeds on October 1, 2008.[2] This loan transaction was the first and only agreement entered into by the parties.

The note set the interest rate at 14% and required interest-only payments from September 1, 2008, through January 31, 2009, after which interest and principal payments were required. To secure the note, the debtor granted the defendant a security interest in the debtor's inventory, goods, accounts, general intangibles, equipment, fixtures, records, and other property. The UCC-1 financing statement contains the same list of property and has a date-stamp of October 3, 2008. Additional security interests were also obtained from a number of other entities.

The defendant's security interest was expressly subordinated to the security interests in the same collateral held by Cornerstone Community Bank and Cohutta Banking of Tennessee. Cornerstone and Cohutta initially filed proofs of secured claims in the amounts of $3,688,512.02 and

---

[1] The plaintiff variously requests $128,062.78 and $128,063.89. The former amount derives from an error in the original complaint, which omitted 44¢ from one transfer and 67¢ from another. The evidence and undisputed facts demonstrate that the latter amount is the correct one, and the court will use that figure throughout this opinion.

[2] The remaining circumstances surrounding the origins and purpose of the loan are disputed.

$391,781.34, respectively.[3] However, the collateral was sold during the course of the debtor's bankruptcy case (most for $1,650,000), and the sales proceeds are insufficient to satisfy both Cornerstone's and Cohutta's claims in full.[4] Hence, there are no monies from the sale of the collateral to apply to the defendant's claim.

Prior to its bankruptcy, the debtor made five payments to the defendant on the note.[5] These payments, along with debt payments made by third party Accredited Investor Resources, Inc. ("AIR"),[6] are detailed in the chart below:

| Amount | Source | Method | Full/Partial | Due Date | Transfer Date |
|---|---|---|---|---|---|
| $18,666.67 | Debtor | Wire | Full | Oct. 31, 2008 | Nov. 6, 2008 |
| $9,333.33 | AIR, LLC | Check | Full | Nov. 30, 2008 | Dec. 4, 2008 |
| $9,333.33 | AIR, LLC | Check | Partial | Dec. 31, 2009 | Jan. 7, 2009 |
| $311.11 | Debtor | Check | Partial | Dec. 31, 2009 | Feb. 13, 2009 |
| $9,644.44 | AIR, LLC | Check | Full | Jan. 31, 2009 | Feb. 19, 2009 |
| $5,544.44 | Debtor | Check | Partial | Feb. 28, 2009 | Mar. 6, 2009 |
| $58,166.67 | Debtor | Check | Partial | Feb. 28, 2009 | Mar. 7, 2009 |
| $64,041.67 | Debtor | Check | Full | Mar. 31, 2009 | Apr. 3, 2009 |

---

[3] A review of the claims register reveals that Cornerstone filed two proofs of claim, one of which asserted a secured claim in the amount of $2,750,571.24, which has now been amended to assert an unsecured claim for $1,406,289.88.

[4] The defendant's brief appears to accept this fact, even though the plaintiff failed to include it in the Statement of Undisputed Material Facts.

[5] Payments were also made in the initial procurement of the loan.

[6] The undisputed facts fail to explain AIR's role. However, its involvement appears to be irrelevant since the plaintiff is not seeking to avoid transfers purportedly made by this entity.

The plaintiff seeks to recover the last four transfers made by the debtor, namely the funds transferred by checks on February 13, 2009, March 6, 2009, March 7, 2009, and April 3, 2009. Together, these transfers amount to $128,063.89.

As the chart shows, none of the payments was timely – a fact that prompted the defendant to send an email, dated March 4, 2009, complaining to the debtor of its late payments. Nevertheless, late payments were accepted and it does not appear that any late charges or penalties were applied.

On April 22, 2009, the debtor filed for chapter 11 relief, and the case was quickly converted to chapter 7. The debtor's schedules of liabilities listed the defendant as having an unsecured, non-priority claim of $750,000. On October 19, 2009, the defendant filed a proof of claim for $775,988.89, which it characterized as secured.

By letter dated August 27, 2009, the plaintiff made a demand upon the defendant for the return of the final four transfers made by the debtor.[7] On December 15, 2009, the plaintiff initiated this adversary proceeding. Subsequently, the plaintiff filed the motion before the court, contending that he is entitled to a summary judgment avoiding and recovering the debtor's four prepetition transfers totaling $128,063.89.

## II.

A party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Fed. R. Bankr. P. 7056. When deciding a motion for summary judgment, the court will construe all reasonable inferences in favor of the non-moving party. *Waeschle v. Dragovic*, 576 F.3d

---

[7] Although not included in the plaintiff's statement of undisputed material facts, the defendant admitted this fact in its answer.

4

539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Where the evidence would permit a reasonable jury to return a verdict for the non-moving party, a genuine issue of material fact exists and summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a movant's summary judgment motion challenges the sufficiency of an affirmative defense on which the non-movant bears the burden of proof, the movant need only demonstrate an absence of evidence supporting the defense. *Katz v. Wells (In re Wallace's Bookstores, Inc.)*, 316 B.R. 254, 263 (Bankr. E.D. Ky. 2004). "[A] defendant who is faced with a summary judgment motion has the same burden as a plaintiff against whom a defendant seeks summary judgment. That burden requires that the non-moving party with the burden of proof on the issue in question produce sufficient evidence upon which a jury could return a verdict favorable to the nonmoving party." *Id.* at 363 (quoting *Lawyers Title Ins. Corp. v. United Am. Bank,* 21 F. Supp. 2d 785, 790 (W.D. Tenn. 1998)).

### III.

The Bankruptcy Code's preference avoidance statute provides:

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
>> (A) on or within 90 days before the date of the filing of the petition; or

>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
>> (A) the case were a case under chapter 7 of this title;
>>
>> (B) the transfer had not been made; and
>>
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The defense set forth in subsection (c) of § 547 upon which the defendant relies is known as the "ordinary course of business" defense:

> The trustee may not avoid under this section a transfer—
>
> . . . .
>
> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>
>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>>
>> (B) made according to ordinary business terms.

The trustee bears the burden of proof on each element of § 547(b) and the defendant bears the burden of proof on defenses under § 547(c). 11 U.S.C. § 547(g).

The undisputed facts clearly show that the four transfers at issue in this proceeding were made by the debtor to the defendant within 90 days of the debtor's bankruptcy filing, and that the transfers were made on account of an antecedent debt owed by the debtor to the defendant. The only contested issues raised by the defendant are whether (1) the plaintiff has adequately demonstrated that the defendant received more than it would have received in a liquidation as required by

6

§ 547(b)(5); (2) the presumption of insolvency has been overcome; and (3) the transfer falls within the ambit of the ordinary course exception of § 547(c)(2).

**A.**

The court must first determine whether the undisputed facts demonstrate that the transfers permitted the defendant to receive more than it would have received in a chapter 7 liquidation. The crux of the dispute is the defendant's security interest. It is apparently undisputed that the defendant, on the petition date, held a properly perfected security interest in virtually all of the debtor's assets. The remaining question is whether the collateral value equals or exceeds the amount of the debt.

Whether or not a particular payment permits a creditor to receive more than it would in a chapter 7 liquidation is determined as of the petition date. *Palmer Clay Prods. Co. v. Brown*, 297 U.S. 227, 229 (1936); *Neuger v. United States (In re Tenna Corp.)*, 801 F.2d 819, 821-23 (6th Cir. 1986). "Payments to a creditor who is fully secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation. Payments to an unsecured or undersecured creditor, however, are preferential." *Ray v. City Bank & Trust Co. (In re C-L Cartage Co., Inc.)*, 899 F.2d 1490, 1493 (6th Cir. 1990). Here, the plaintiff has provided an affidavit explaining that virtually all of the debtor's property has been sold and the proceeds were insufficient to satisfy the secured claims to which the defendant's claim is subordinated. Absent full payment on these senior secured claims, the defendant's claim is unsecured or, at best, grossly undersecured.[8]

---

[8] The defendant does not assert that it was paid out of its own collateral, perhaps because of the subordination agreement.

The defendant disputes this conclusion in only one respect: it contends that the senior secured claims, as well as its own claim, will be paid in full because the estate will be augmented by a recently obtained avoidance and recovery judgment of $6.5 million. The problem, however, is that the trustee's recovery is on behalf of the estate, not secured creditors. 11 U.S.C. § 550(a). Although the defendant claims a security interest in the proceeds of the avoidance action, a prepetition security interest cannot attach to collateral that does not come into being until a bankruptcy petition is filed by or against the debtor. Moreover, § 552(a) generally cuts off security interests and the defendant does not explain why its claim would be exempt from this rule. *In re Southeast R.R. Contractors, Inc.*, 235 B.R. 619, 622 (Bankr. E.D. Tenn. 1996) ("[T]he majority of courts . . . have held that preference actions are unique bankruptcy devices designed specially to increase the dividend for unsecured creditors and that therefore secured creditors, even those with rights in proceeds, can have no interest in a trustee's preference recovery."); 5 *Collier on Bankruptcy* ¶ 552.02[5][d] (16th ed. 2010) ("[I]t is difficult to see how [§ 550] recoveries can be other than 'after-acquired property' within the meaning of § 552(a).'"). Indeed, even where a creditor can trace its security interest to the proceeds of an avoidance action, courts have generally not permitted them to enforce those interests. 5 *Collier on Bankruptcy* ¶ 552.02[5][d] (16th ed. 2010) ("[T]he more persuasively reasoned opinions do not permit creditors to share in recoveries obtained by bankruptcy trustees or estate representatives pursuant to the avoiding powers, even where such creditors may have independent, traceable rights to those funds."); *see also Frank v. Michigan*, 261 B.R. 909 (E.D. Mich. 1999), *aff'd*, 252 F.3d 852 (6th Cir. 2001).

In short, the undisputed evidence before the court demonstrates that the transfers to the defendant allowed it to receive more than it otherwise would receive in a chapter 7 distribution. Therefore, § 547(b)(5) is satisfied.

**B.**

The defendant also asserts that the plaintiff has failed to demonstrate that the debtor was insolvent. The Bankruptcy Code provides a trustee with a presumption that the debtor was insolvent during the 90-day period preceding the petition date. 11 U.S.C. § 547(f). The defendant attempts to rebut this presumption by claiming, without citing any authority, that the value of various bankruptcy avoidance actions should be included in the insolvency analysis and that such inclusion would render the debtor solvent as of the petition date. Such claims, however, belong to the estate, not the prepetition debtor, and the petition date itself is irrelevant, since insolvency is determined as of the date of the transfer. *Id.* § 547(b)(3). Because it is clear that the debtor did not possess any of the trustee's causes of action on the transfer dates,[9] the defendant's evidence fails to overcome the presumption of insolvency.

---

[9] Even if included, these figures would not rebut the presumption of solvency. The defendant admits that the schedules demonstrate insolvency on the order of $6.5 million. The debtor claims that the pending and completed adversary proceedings seek an aggregate recovery of $8,828,062.78. However, pending preference actions would have no balance sheet effect, since they merely allocate funds among creditors: although the estate's assets would be increased by any such recovery, its liabilities would increase by the same amount since the claims of creditors disgorging preferences are increased accordingly; so there would be a zero net effect on the estate's balance sheet. Additionally, potential fraudulent transfer judgments would have to be discounted according to their likelihood of materializing and, like any other receivable, their likelihood of collection. The application of even a slight discount to the face value of a judgment would return the estate to insolvency. And, again, the issue is not the estate's insolvency but is the debtor's insolvency on the transfer dates.

**C.**

The plaintiff also seeks summary judgment on the defendant's "ordinary course of business" defense under § 547(c)(2). This exception was designed to "'protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the Debtor and the transferee." *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 872 F.2d 739, 743 (6th Cir. 1989) (quoting *Energy Coop., Inc. v. SOCAP Int'l, Ltd. (In re Energy Coop., Inc.)*, 832 F.2d 997, 1004 (7th Cir. 1987)).

The defendant does not appear to rely on paragraph (B), which requires that "the creditor . . . characterize the payment practices of its industry with specificity, and present specific data to support its characterization," especially in cases "where the parties have not dealt extensively with one another in the past." *Carrier Corp. v. Buckley (In re Globe Mfg. Corp.)*, 567 F.3d 1291, 1299 (11th Cir. 2009). No such evidence is in the record, so the court will assume that the defendant is only arguing that the debt was both incurred and paid in the ordinary course of business.

Generally, whether a transfer was made in the ordinary course between the debtor and transferee is a subjective inquiry requiring the examination of numerous factors, "including timing, the amount and manner a transaction was paid and the circumstances under which the transfer was made." *Yurika Foods Corp. v. UPS (In re Yurika Foods Corp.)*, 888 F.2d 42, 45 (6th Cir. 1989). Here, the undisputed facts demonstrate that the debtor and the defendant had no prior relationship before entering into the loan transaction at issue in this case, and that their entire relationship is comprised of five loan payments, four of which the plaintiff is seeking to avoid. While this limited prior relationship will not necessarily preclude application of the "ordinary course" exception, *see Gosch v. Burns (In re Finn)*, 909 F.2d 903, 908 (6th Cir. 1990), it will make compliance with the terms of

the contract more important, since such terms constitute the best evidence of "ordinariness" from the parties' perspective, *Globe Mfg. Corp.*, 567 F.3d at 1298 (citing *Logan v. Basic Distribution Corp. (In re Fred Hawes Org., Inc.)*, 957 F.2d 239, 244 (6th Cir. 1992)).

One of the most important factors in the § 547(c)(2)(A) analysis is timeliness. As the Sixth Circuit has explained: "Late payment of a debt has been considered particularly important in determining whether the payment is ordinary" and such late payments "will be considered 'ordinary' only upon a showing that late payments were the normal course of business between the parties." *Fred Hawes Org.*, 957 F.2d at 244. In other words, "[f]ailure to make a payment within the time limit set forth in the contract is presumptively 'nonordinary.'" *Id.*

Whether a payment was timely is generally determined by comparing the contractual terms to the actual date of transfer. When payment is made by check, the Sixth Circuit uses the date of delivery for determining the "transfer" date under § 547(c)(2), in contrast to the date of honor rule used in the § 547(b) context. *Compare Barnhill v. Johnson*, 503 U.S. 393, 397-402 (1992) (adopting date of honor rule for § 547(b)), *with Brown v. Shell Can. Ltd. (In re Tenn. Chem. Co.)*, 112 F.3d 234, 238 (adopting date of delivery rule for § 547(c)(4)), and *Still v. Fruehauf Corp.*, 1 F.3d 1242 (6th Cir. 1993) (unpublished table decision), *available at* 1993 WL 264679, at *5 (adopting date of delivery rule for § 547(c)(2)). Further, the Sixth Circuit has explained that "date of delivery" means the date of receipt rather than the date the payment was sent. *Official Unsecured Creditors' Comm. of Belknap, Inc. v. Shaler Corp. (In re Belknap, Inc.)*, 909 F.2d 879, 884 (6th Cir. 1990), *abrogated on other grounds by Barnhill v. Johnson*, 503 U.S. 393 (1992). Under these rules (and as reflected in the payment history above), it is evident that all of the transfers at issue were "late," thereby rendering the payments presumptively non-ordinary.

To rebut this presumption of non-ordinariness, the defendant would have to offer evidence that late payments were the normal course of business between the parties. *Fred Hawes Org.*, 957 F.2d at 244. Such evidence is lacking. First, the record contains an email demanding that payments be made according to schedule. This evidence strongly suggests that the defendant did not acquiesce in any due-date alterations. Second, the parties' relationship was too short and limited to have created a course of dealing modifying the contractual due dates. The parties had no prior relationship and the prepetition loan repayments were made over a period of little more than 6 months. Even more notably, the debtor itself only made five payments, all but one within the preference period. Other cases have found similar facts insufficient to render late payments "ordinary." For example, in the *Fred Hawes* case, the Sixth Circuit affirmed lower court rulings determining that § 547(c)(2) was not satisfied. In particular, the court noted the district court's observations that the late payments could be "ordinary" under a course of dealing but that the evidence in that case was insufficient because the parties only had a six-month relationship and because the two payments sought to be avoided were larger than any prior payments. *Fred Hawes Org.*, 957 F.2d at 244-45. Similarly, in *Wallace's Bookstores*, the court, in the summary judgment context, found no modification of the contractual due date where "the lending relationship . . . existed only six months and . . . the three payments sought to be avoided were the only loan payments ever made." *Katz v. Wells (In re Wallace's Bookstores, Inc.)*, 316 B.R. 254, 266 (Bankr. E.D. Ky. 2004); *see also Globe Mfg.*, 567 F.3d at 1298-99 (late payments not "ordinary" even though all four payments were consistently one month late where parties only had a six month contractual relationship).

Additionally, numerous other anomalous aspects of the transfers further demonstrate that the transfers were not made in the "ordinary course." For example, the transfers were made by different

12

means (some by wire, others by check), varied greatly in amount (ranging from a meager payment of $311.11 up to a sizeable transfer of $64,041.67 just weeks before the bankruptcy filing), varied in completeness (some payments having been partial and others having been full payments), and even varied as to which entities were involved (some payments on the debt having been made by an entity other than the debtor).

The defendant's only attempt to counter this evidence is through the affidavit of Tim Deode, a portfolio manager of a firm that provided investment advice to the defendant. Deode states that the debtor's "payments were made pursuant to and in compliance with the revised repayment schedule." (Deode Aff. ¶ 13.) This vague assertion is insufficient, however, to create a factual dispute regarding the "lateness" of the payments.

In light of the plaintiff's evidence and the defendant's lack of it, the court finds that no reasonable fact-finder could conclude that the transfers at issue in this case were made in the ordinary course of business.[10] Accordingly, the plaintiff is entitled to summary judgment on the defendant's "ordinary course of business" defense.

**IV.**

The plaintiff also seeks prejudgment interest. Prejudgment interest is not automatically applied but may be granted under § 550(a) in order to make the estate whole. *Carrier Corp. v. Buckley (In re Globe Mfg. Corp.)*, 567 F.3d 1291, 1300 (11th Cir. 2009); *see Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 990 (6th Cir. 1982). Whether prejudgment interest should be granted is left to the sound discretion of the trial court, though courts are divided on the scope of this discretion.

---

[10] In light of this conclusion, the court need not consider whether the debts were incurred in the ordinary course of business as required by § 547(c)(2).

13

Some courts hold that, absent a sound reason to deny such interest, it should be permitted; other courts, finding that prejudgment interest derives from equitable powers, countenance a more flexible approach. *Compare In re Milwaukee Cheese Wis., Inc.*, 112 F.3d 845, 849 (7th Cir. 1997), *with Globe Mfg.*, 567 F.3d at 1300-01. Under either standard, the court finds that prejudgment interest is justified in this case and is necessary to restore to the estate the time value of the transferred funds.

Typically, when prepetition interest is awarded, it is awarded from the date of demand though, in the case of a letter demand, courts frequently start the accrual of interest three days later, relying on Rule 9006(f) of the Federal Rules of Bankruptcy Procedure. *DuVoisin v. Anderson (In re S. Indus. Banking Corp.)*, 87 B.R. 518, 522-23 (Bankr. E.D. Tenn. 1988). In this case, the first demand was a letter dated August 27, 2009. Accordingly, the court will award prejudgment interest from August 30, 2009, at the rate prescribed by 28 U.S.C. § 1961(a).

**V.**

For the foregoing reasons, the plaintiff's motion summary judgment motion will be granted. A separate judgment will be entered contemporaneously with the filing of this memorandum opinion.

###